# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MARIAN DIXSON,** *on behalf of herself and those similarly situated,* : | |
| : | Case No. 2:24-cv-3828 |
| **Plaintiff,** : | |
| : | **Judge Algenon L. Marbley** |
| : | **Magistrate Judge Chelsea M. Vascura** |
| **v.** : | |
| : | |
| **SUPREME TOUCH HOME HEALTH SERVICES CORP.,** : | |
| : | |
| **Defendants.** : | |

## **OPINION & ORDER**

This matter is before this Court on Plaintiff Marian Dixon's Motion to Dismiss All Counterclaims. (ECF No. 8). For the reasons set forth below, the motion is **GRANTED**.

## I.     BACKGROUND

Named Plaintiff Marian Dixson brings this case individually and on behalf of all others similarly situated against Defendant Supreme Touch Home Health Services Corp, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Ohio Prompt Pay Act ("OPPA"). (ECF No. 1).

Dixson, a non-exempt hourly employee, has worked for Defendant since February 2022, primarily in the position of Home Health Aide, performing personal care services for clients located in the Southern District of Ohio. (ECF Nos. 1 ¶¶ 5-6, 11; 3 ¶¶ 5, 11). She alleges that she and other similarly situated employees worked hours in excess of forty (40) hours per workweek and were not paid overtime compensation at a rate of one and one-half times their regular rate of pay, as required by FLSA and the OPPA. (*Id.* ¶¶ 36-39).

On October 11, 2024, Defendant filed its Answer and asserted counterclaims against Dixson, alleging: (1) intentional interference with business and employment relationships; (2) defamation; and (3) defamation per se. (ECF No. 3 ¶¶ 104-114).

According to an email exchange between counsel, attached to Dixson's motion to dismiss, Defendant's counsel claims that Dixson physically assaulted the daughter of one of Defendant's patients and that Defendant "had no choice but to terminate her employment." (ECF No. 8-1 at 5). Defendant's counsel further stated that this incident would be used to "corroborate" the counterclaims and warned that Defendant would "have no choice but to prosecute" the claims "to the fullest extent possible," cautioning that such action could result in a judgment that offsets Dixson's wage-and-hour claims. (*Id*.). In response, Dixson's counsel argued that the counterclaims and alleged altercation are unrelated to the subject matter of this FLSA and OPPA action and therefore do not belong in this forum. (*Id*. at 4).

Dixson now moves to dismiss these counterclaims for lack of subject matter jurisdiction. (ECF No. 8).

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a party may assert a "lack of jurisdiction" by motion as a defense to a complaint and, if the court finds that it lacks subject matter jurisdiction, the court must dismiss the action. Federal courts are courts of limited jurisdiction, and the plaintiff has the burden of proving jurisdiction to survive a motion to dismiss. *DHSC, LLC v. California Nurses Assn./national Nurses Organizing Committee, AFL-CIO*, 700 Fed.Appx. 466, 470 (6th Cir. 2017).

District courts have original jurisdiction through diversity jurisdiction and federal question jurisdiction. Two requirements must be met for a federal court to have diversity jurisdiction under

2

28 U.S.C. § 1332(a). First, there must be complete diversity between the parties, meaning that "no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). Second, the amount in controversy must exceed $75,000. *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010). Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States . . . ." 28 U.S.C. § 1331. Accordingly, federal question jurisdiction "exists when the cause of action arises under federal law." *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020).

Moreover, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even so, district courts "may decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c). The court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Local School Dist. Bd. of Education v. DeWine*, 486 F.Supp.3d 1173, 1195 (S.D. Ohio 2020) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). "At bottom, it is a 'doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.'" *Id.*

Before this Court is a motion to dismiss counterclaims for lack of subject matter jurisdiction. There are two types of counterclaims: compulsory and permissive. *See* Fed . R. Civ. P. 13. Federal Rule of Civil Procedure 13 provides that a compulsory counterclaim is one that must

be brought if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). A permissive counterclaim is any claim that is not compulsory. Fed. R. Civ. P. 13(b). The Sixth Circuit applies the "logical relationship" test when determining whether a claim is compulsory or permissive. *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991). Under this test, the court decides "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id*.

### III. LAW AND ANALYSIS

Dixson argues that the counterclaims should be dismissed because: (1) they do not raise questions under any federal statute and diversity does not exist because all parties are Ohio residents and the proposed counterclaims do not allege any amount of damages; (2) Dixson's claims and Defendant's proposed counterclaims do not form part of the same case or controversy because they do not form a common nucleus of operative facts; and (3) Defendant's state law claims will substantially predominate over Dixson's statutory claims for underpayment of wages under the FLSA and Ohio Acts. (ECF No. 8). Defendant responds, arguing that the counterclaims are compulsory or permissive and this Court is entitled to exercise supplemental jurisdiction. (ECF No. 9 at 2).

While this Court has federal question subject matter jurisdiction over Dixson's Complaint based on the alleged violations of the FLSA, it has neither diversity nor federal question jurisdiction over Defendant's counterclaims. Diversity jurisdiction is absent because, according to the Complaint, Dixson and Defendant are both citizens of Ohio. (ECF No. 1 ¶¶ 4, 12). Further, Defendant's counterclaims are grounded in state law, making federal question jurisdiction unavailable. In Defendant's response to Dixson's motion to dismiss, it does not argue that diversity

4

or federal question jurisdiction exists, but instead urges the Court to exercise its supplemental jurisdiction. (ECF Nos. 9; 10 at 6).

Accordingly, this Court must determine whether the counterclaims are permissive or compulsory under Fed. R. Civ. P. 13, whether the Court lacks supplemental jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367(a), and whether the Court should exercise supplemental jurisdiction over the counterclaims under § 1367(c).

### A. Whether the Counterclaims Are Permissive or Compulsory

Defendant argues that the counterclaims are compulsory because they arise from Dixson's "utterly vulgar and violent behavior" towards Defendant's clients. (ECF No. 9 at 3). Defendant asserts that these counterclaims are tied to the same employment relationship that forms the basis for Dixson's wage claims. (*Id*.).

Dixson rejects Defendant's assertions, citing numerous cases where counterclaims of this nature were found to be permissive and not compulsory. (ECF No. 8 at 10-15). One such case is *Sneed v. Wireless PCS Ohio #1, LLC*, 2017 WL 879591 (N.D. Ohio Mar. 6, 2017), where the court held that counterclaims arising from an employment relationship but involving different issues of law and fact from the FLSA claim were not compulsory. In *Sneed*, defendants brought counterclaims of misappropriation, theft, conversion of business property, damage to reputation, breach of contract, breach of fiduciary duty, and intentional tort. S*need*, 2017 WL 879591, at *3. The court found that the claims arise under Ohio law and were not implicated in the plaintiff's FLSA claim. *Id*. The court noted that none of the evidence that would be needed to prove the counterclaims would be necessary to prove or defend the FLSA claim. Additionally, the claims and evidence involved in the counterclaims significantly outnumbered what was involved in the plaintiff's single FLSA claim. The court held that "[i]n applying the logical relationship test to the

claims at issue here, the court finds that the claims are not logically related to one another. They involve different issues of law and fact and different evidence would be required to prove them."

Similarly, in *Anderson v. P.F. Chang's China Bistro, Inc.*, 2017 WL 3616475, *4 (E.D. Mich. Aug. 23, 2017), the court found that counterclaims involving breach of contract and misconduct were not compulsory, as they did not arise from the same transaction or occurrence as the plaintiff's claims. The plaintiff's labor claims focused on how many hours he worked, how much he was paid, and whether he was an exempt or non-exempt employee under the FLSA. *Anderson*, 2017 WL 3616475, at *4. The defendant's counterclaims, however, involved questions of whether the parties had a contract, whether the plaintiff breached any contract, whether the plaintiff was unjustly overpaid for work he performed, whether the plaintiff engaged in misconduct or grossly mismanaged the defendant's affairs, and whether the defendant was damaged. As such, the parties' claims in *Anderson* involved different laws and evidence, making the counterclaims permissive.

Defendant acknowledges that some cases involving FLSA wage claims found the counterclaims to be permissive, particularly where those counterclaims did not arise from the employment relationship. (ECF No. 9 at 4). Defendant's argument, however, relies solely on the existence of this employment relationship, without providing any case law to support that the mere fact of such a relationship is sufficient to compel a counterclaim under Fed. R. Civ. P. 13 and the "logical relationship" test. For example, in *Bruce v. Sana Health, Inc.*, 504 F.Supp.3d 653, 658–59 (E.D. Mich. 2020), the court highlighted that while the claims arose from the same employment relationship, this alone did not warrant supplemental jurisdiction. The court further noted that Defendant failed to cite relevant case law supporting their assertion that a counterclaim stemming solely from an employment relationship should be considered compulsory. This Court agrees with

6

the reasoning in *Bruce* and similarly does not find that claims arising merely from the employment context are sufficient to compel the counterclaims in this case.

This brings this Court to the relevance of *Sneed* and *Anderson*, both of which involved counterclaims stemming from an employment relationship but not arising from the same transaction or occurrence as the wage claims. In both cases, the courts determined that the counterclaims were permissive, as they involved different legal issues and evidence. Defendant's failure to address these directly relevant cases further undermines the argument that the counterclaims in this case are compulsory.

As with *Sneed* and *Anderson*, the counterclaims in this case involve distinct legal issues and factual evidence that are unrelated to the wage and hour claims brought by Dixson. A "compulsory counterclaim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." *Sanders*, 936 F.2d at 277. Dixson's claims focus on the hours worked, wages paid, and overtime compensation. (ECF Nos 1; 8 at 3-4). Defendant's counterclaims, on the other hand, are predicated on Dixson's conduct and behavior during her employment. (ECF Nos. 3 ¶¶ 104-114; 9 at 3). While Defendant contends that all claims stem from the same employment relationship, the substance of the counterclaims, defamation and business interference, is entirely separate from the wage and hour concerns central to Dixson's claims.

Defendant does not assert that the counterclaims have any bearing on the hours worked, wages paid, or the issue of overtime compensation, nor do the counterclaims suggest any implication for Dixson's wage and hour claims. There is no sufficient logical relationship between the claims concerning Dixson's compensation and the allegations of defamation or business interference.

As such, this Court finds that the counterclaims are permissive and not compulsory. Even though the counterclaims arise from the same employment relationship, they do not arise from the same transaction or occurrence as the wage and hour claims.

### B. Supplemental Jurisdiction Under 28 U.S.C. § 1367

Having determined that the counterclaims are permissive, this Court now turns to the issue of supplemental jurisdiction. Defendant argues that, even if this Court finds the counterclaims are permissive, it should nonetheless exercise supplemental jurisdiction over them in the interests of judicial economy. (ECF No. 9 at 5). Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over claims that do not independently satisfy diversity or federal jurisdiction, provided that the original "complaint properly invokes the district court's jurisdiction and . . . the other claims[ ] 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Voyticky v. Vill. of Timberlake, Ohio,* 412 F.3d 669, 675 (6th Cir.2005) (quoting 28 U.S.C. § 1367). For claims to form part of the same case or controversy, they must "derive from a common nucleus of operative facts." *Watson v. Cartee*, 817 F.3d 299, 303 (6th Cir. 2016) (quoting *Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 209 (6th Cir.2004)).

Even assuming the Complaint and counterclaims derive from a common nucleus of operative facts, this Court would nonetheless decline to exercise supplemental jurisdiction because the counterclaims substantially predominate over the Complaint. Under § 1367(c) a court may decline to exercise supplemental jurisdiction over a claim when the claim substantially predominates over the claim or claims over which the court has original jurisdiction. "Although there appears to be no definitive test to determine whether state law predominates over federal claims, courts have considered such factors as whether they outnumber the federal law claims;

8

whether the claims are distinct; and whether [the] state law claims involve proof that is not needed to establish the federal law claims." *Williamson v. Recovery Ltd. P'ship*, 2009 WL 649841, at *9 (S.D. Ohio March 11, 2009). Here, Dixson's wage claims focus on the FLSA and involve distinct issues of law and evidence from Defendant's counterclaims, which involve allegations of defamation and business interference.

Defendant argues that dismissing the counterclaims would require litigation in two forums and would not serve judicial economy. (ECF No. 9 at 5). Defendant also asserts that it would not be burdensome to conduct discovery on both the federal and state law issues simultaneously, and that no further discovery is required on the wage claim and the only issue for the court will be Dixson's anticipated motion for attorneys' fees. (*Id.*). According to Defendant, this is not a complicated case because it has straightforward issues and is unlikely to confuse a jury. (*Id.*).

The burden of litigating in two forums, however, is minimized by the fundamental differences between the claims. The Sixth Circuit has clarified that a court's inquiry must balance the "interests of judicial economy and the avoidance of multiplicity of litigation" against "needlessly deciding state law issues." *James v. Hampton*, 592 Fed. Appx. 449, 462–63 (6th Cir. 2015) (quoting *Landefeld v. Marion General Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir.1993)). Moreover, as this Court previously held, judicial economy is not served when "the facts the parties must establish and the evidence they will likely give in proving their respective claims are largely different. Thus, whatever gains are made in economy and efficiency are unlikely to be significant." *Slaughter v. Regional Acceptance Corp.*, 2020 WL 7342898, *7 (S.D. Ohio Dec. 14, 2020).

In the case *sub judice*, the evidence required for the FLSA claims—concerning hours worked, wages paid, and overtime—differs markedly from the evidence needed for Defendant's

9

state law counterclaims. As such, any burden from litigating in multiple forums is outweighed by the Court's interest in avoiding the unnecessary resolution of state law issues.

After balancing the appropriate interests, this Court finds Defendant's counterclaims are insufficiently related to Dixson's Complaint. Accordingly, this Court declines to exercise supplemental jurisdiction over the claims.

## IV.   CONCLUSION

For the reasons discussed above, Plaintiff Marian Dixon's Motion to Dismiss All Counterclaims. (ECF No. 8) is **GRANTED**. Accordingly, Defendant's Counterclaims are **DISMISSED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
UNITED STATES DISTRICT JUDGE

**DATED:  September 22, 2025**